## WALCOTT v. UNION FERRY CO. OF NEW YORK & BROOKLYN.

### (District Court, E. D. New York. April 4, 1914.)

COLLISION (§ 96*)—FERRYBOAT COMING FROM SLIP—FAILURE TO WAIT PASSING OF LIGHTER.

> A ferryboat *held* solely in fault for a collision off the Battery as she came out of her slip with a passing lighter which had stopped in front of the slip to avoid other vessels and was in plain sight when the ferryboat started out.
>
> [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

In Admiralty. Suit for collision by Mary C. Walcott, as owner of the lighter Alice, against the Union Ferry Company of New York & Brooklyn. Decree for libelant.

Foley & Martin, of New York City, for libelant.
James J. Macklin, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CHATFIELD, District Judge.   On the evening of March 4, 1913, the lighter Alice was returning from delivering a deck load of coal to a steamer near Bedloes Island.   Some of the men who had been working in delivering the coal and the superintendent of the business were on board, and this superintendent was anxious to catch the municipal ferry boat to Staten Island, leaving approximately at 9 o'clock.

As the Alice rounded the Battery above Governors Island, she headed toward her pier (No. 6 on the New York side of the East River), and upon reaching a point opposite the Barge Office, and about midway toward Governors Island, it become apparent that the ferryboats leaving the Battery were making ready to start out.

The chart put in evidence shows that the Staten Island Ferry boats used two slips immediately to the east of the government slip at the Barge Office.   The racks of the Staten Island Ferry extend further out in the river than those of the ferries to the east.   Next in order are the two slips of Hamilton Avenue and the Atlantic Avenue (or South Ferry) boats, respectively.   Next to these upon the east are the slips of the Thirty-Ninth Street (or South Brooklyn) Ferry, and beyond these comes pier 5 of the regular numbered piers in the East River.

A boat was in the eastern slip of the Staten Island Ferry, and this was the one which the superintendent upon the Alice was desiring to catch.   The Alice was proceeding with speed up to this point.   The Thirty-Ninth Street Ferry boat, which was the farthest to the east, but which had the shortest distance to go to get out in the channel between the Battery and Governors Island, blew her slip whistle and began to move from the slip, just as the Atlantic Avenue (or South Ferry) boat got under way.   This also blew a slip whistle when leaving her slip and headed across the course of the Thirty-Ninth Street boat, so that the latter, being slower in speed, allowed the South Ferry boat to cross her bow and remained substantially stationary just outside of her ferry rack, but carried by the ebb tide toward the Hudson or North River.   Right after the South Ferry boat, the Montauk (of the Hamilton avenue line) gave her slip whistle and started from the slip. Everything, so far as her departure was concerned, was conducted in the usual way, and she did not begin to move ahead until the captain had blown the slip whistle and given the signal to start.   Her gangwayman, having helped cast the boat loose, walked across her stern, climbed the ladder and up onto the deck going to the bow pilothouse, to act as second man therein.   From a position a little forward of amidships, in his walk over the length of the vessel, he observed the Alice then just coming into view from under the bow of the Staten Island Ferry boat, which in the meantime had blown her slip whistle and started out.   The Alice was seen by the Staten Island Ferry boat, which waited for her to pass, and then, observing her danger of collision with the Montauk, stopped and started to lower a boat.   The Staten Island Ferry boat therefore, at the time of the collision, occupied the water immediately to the south and out from her own slip, which was just alongside that of the Montauk, but was carried away from further danger by the ebb tide.   The Montauk started ahead un-

der a jinglebell, but the captain, observing the Alice, sounded an alarm and had the engines of the Montauk reversed. The engineer testifies that about seven turns were taken, which would substantially bring the Montauk to a standstill, and the Alice, with her own engines reversed. just before the collision, began to move astern and swung her stern to port, bringing up just under the counter or starboard bow of the ferry-boat near the entrance to the cabin. The contact was extremely slight. The captain in charge of the Montauk had been used to a slightly smaller and different vessel, and the testimony would indicate that he observed the Alice and intended to stop his own boat in order to give the Alice room to pass. The Montauk blew the slip whistle, which would indicate that she was coming out, but does not constitute a course signal, and does not require reply from a boat in plain sight, blocking the slip, unless an alarm be given by the latter. On the other hand, the Alice accepted the direction from the Thirty-Ninth Street and South Ferry boats which were then proceeding toward the East river, to pass astern of those boats, and stopped her own progress when it was evident that the Thirty-Ninth Street boat (which blew a two-whistle signal to the Alice) was going to lie still across the course in order to let the South Ferry boat pass out of the way. The Alice was then in plain sight of the Montauk, and the Montauk could observe the other ferryboats and knew of their positions and movements.

It does not seem that any fault can be charged to the Alice for having indicated to the Montauk that, after crossing the slip, she was going to proceed ahead by blowing a one-whistle signal and then reversing when the collision became imminent. As she was not going ahead, she could not hold any course and speed except as she could gather speed when the path was clear. She let the Montauk know that she was in a position immediately in front of the slip, and was expecting to pass on to the east as fast as possible. This the Montauk saw for herself, and the only fault which is substantially charged against the Alice was that she was too close to the ferry slips, and that she did not get out of the way.

In view of the fact that the ferryboat had not yet come out, and that the Alice was compelled to assume this position in order to pass behind the other ferryboats, and as there was room enough to maneuver, the Montauk cannot excuse her failure to remain in the slip or to stop her motion in time to avoid even the slight collision which happened. The testimony would indicate that the failure of the Montauk to respond as quickly as the boat to which the captain had been accustomed was the real cause which made the boats come together.

Some testimony was introduced to indicate that the men upon the Alice were laughing and were all assembled in the pilot house, suggesting an inference that they were not keeping watch; but their anxiety to make the Staten Island boat, and their appreciation of the exact position and movements of the boats all around them, negative any finding of carelessness in that regard. The case is not one where a boat is passing around close to a ferry slip or pierhead and suddenly emerges in the path of a ferryboat which does not have time to observe her. Unless some rule should be adopted regarding a boat ap-

proaching, from the west, a slip upon the New York side at the Battery, requiring her to make a turn to port and to run into the shore along her starboard side, it is impossible to charge negligence for running in toward 'the pier at which a landing is to be made, if the ordinary rules of navigation are observed in so doing.

In the present instance, the Alice seems to have been observing the proper rules, and the fault was in some way with the ferryboat, which retained its momentum until it came in contact with the Alice, which, when it saw that collision was imminent, attempted to back out of the way and almost succeeded in so doing.

The libelant may have a decree.